# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSHUA ROBINSON, on behalf of** | : | **CIVIL ACTION** |
| **himself and all others similarly situated** | : | |
| *Plaintiff* | : | **NO. 18-441** |
| | : | |
| **v.** | : | |
| | : | |
| **ENHANCED RECOVERY** | : | |
| **COMPANY d/b/a** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                    JUNE 10, 2019

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Joshua Robinson ("Plaintiff")[1] brings this putative class action pursuant to the

Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*, against Defendant

Enhanced Recovery Company, doing business as ERC ("Defendant").   Before this Court is

Plaintiff's *motion for class certification* filed pursuant to Federal Rule of Civil Procedure ("Rule")

23, [ECF 36], Defendant's response in opposition, [ECF 39], and Plaintiff's reply.  [ECF 46].  The

issues presented have been fully briefed and, for the reasons set forth herein, the motion for class

certification is granted.

### BACKGROUND

The relevant facts of Plaintiff's claims are summarized as follows:

Plaintiff, a Pennsylvania resident, subscribed for residential services from
Comcast Cable Communications, LLC ("Comcast"), a non-party in this action.  In
order to begin receiving the services, Plaintiff signed a Comcast Agreement for
Residential Services (the "Comcast Agreement"), which contained a provision entitled
**Collection Costs**, which read: "If we use a collection agency or attorney to collect
money owed by you, you agree to pay the reasonable costs of collection.  These costs

---

[1]      Phillip Gibson was originally a co-plaintiff in this case, but by joint motion of the parties, the Court
dismissed him from the action.  [ECF 35, 37].

include, but are not limited to, any collection agency's fees, reasonable attorneys' fees, and arbitration or court costs." (ECF 12 at 27).

In March 2017, Plaintiff had a delinquent debt to Comcast in the amount of $513.79. Comcast referred this matter to Defendant for collection. Plaintiff contacted Defendant to pay his debt and was informed on the phone that there was a convenience fee of $12.95 to pay the debt telephonically. Plaintiff negotiated the convenience fee down to $6.95, which he paid, and negotiated a reduction of his debt to $333.96, which he paid.

In his complaint, Plaintiff asserts a claim on behalf of himself and a purported class of similarly-situated debtors against Defendants for charging an unauthorized convenience fee to pay his debt by phone, in violation of the Fair Debt Collection Practices Act ("FDCPA").[2] [ECF 1]. Discovery revealed that the convenience fee was unrelated to the cost Defendant incurred to offer payments by phone and was higher than the convenience fee Defendant applied to debts collected on behalf of other companies, such as T-Mobile and Sprint. [ECF 32 at 65]. Defendant moved for summary judgment and argued that no genuine issue of material fact existed since the convenience fee charge was permissible under the FDCPA and constituted a "reasonable cost of collection" authorized by the Comcast Agreement as it fell in the category of "any collection agency's fees." [ECF 12]. On February 4, 2019, the motion for summary judgment was denied. [ECF 31].

In the instant motion, Plaintiff moves to certify a class of similarly-situated individuals based on the allegations in his complaint. [ECF 36]. Plaintiff defines the proposed class members as:

> All consumers with a Pennsylvania address that paid a convenience fee by phone to Defendant for payments for personal, household, or family debts originating with Comcast Cable Communications within one year prior to the filing of the complaint. [*Id.* at 1].

---

[2]     In the complaint, Plaintiff alleged that Defendant's agent referred to the fee as a "processing fee" on the phone. However, Defendant apparently produced a recording of the call in which its agent referred to the fee as a "convenience fee." [ECF 12 at 7 n.4]. In subsequent filings, Plaintiff has consistently referred to the fee as a "convenience fee."

Defendant opposes the motion on the following grounds; *to wit*: Plaintiff and his class counsel should not be permitted to represent the proposed class because this case is a product of an allegedly improper client referral scheme; Plaintiff has failed to satisfy the "commonality" requirement for class actions; and Plaintiff has failed to adequately define the proposed class. [ECF 39].

**LEGAL STANDARD**

Rule 23 governs the process for the certification of class actions in federal court. A plaintiff seeking class certification must satisfy all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013); *see also Marcus v. BMW of N. Am.*, 687 F.3d 583, 590 (3d Cir. 2012). Rule 23 does more than "set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Indeed, a party moving to certify a class "must affirmatively demonstrate his compliance with the Rule." *Id.* A district court's analysis of a motion for class certification "must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc.*, 568 U.S. at 465-66 (quoting *Dukes*, 564 U.S. at 351). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id.* at 466. "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).

To satisfy the requirements of Rule 23(a):

> (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or

> defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

*Marcus*, 687 F.3d at 590-91 (citations omitted).

Here, Plaintiff seeks certification of the proposed class, as previously defined, pursuant to Rule 23(b)(3). This Rule permits certification when the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## DISCUSSION

As noted, in the class action complaint, Plaintiff avers that Defendant violated several provisions of the FDCPA, including § 1692f(1), by charging each member of the putative class a convenience fee to pay their bills over the phone. Plaintiff argues that the convenience fee quoted to the putative class members was unrelated to the costs incurred by Defendant to offer a pay-by-phone option, and was higher than the fees to pay by phone that Defendant quoted to individuals who accrued debts with other companies that imposed a maximum fee Defendant could charge consumers to pay by phone. Section 1692f prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

### I.     Ascertainability

As a prerequisite to class certification, a plaintiff first "must show by a preponderance of the evidence that there is a reliable and administratively feasible method for ascertaining the class." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 356 (3d Cir. 2013). To meet this prerequisite, "the

class must be defined with reference to objective criteria." *Id.* at 355. Second, "there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.*

This Court finds that the proposed class is sufficiently ascertainable. The proposed class is limited to Pennsylvania residents who paid a convenience fee to Defendant for the option of paying a debt owed to Comcast by phone. Members of the proposed class can likely be identified through a review of Defendant's company records. Plaintiff asserts, and Defendant does not dispute, that based on Defendant's representations made during discovery, the number of potential class members is approximately 3,184. Accordingly, Plaintiff has satisfied the preliminary Rule 23(a) considerations.

## II.     Rule 23(a) Requirements

To determine whether class certification is appropriate and Plaintiff's motion should be granted, an analysis of each Rule 23(a) factor is required.

### A.     Numerosity

Under Rule 23(a)(1), the court must determine whether the potential class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Although "Rule 23(a)(1) does not require a plaintiff to offer direct evidence of the exact number and identities of the class members[,] . . . . in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding." *Hayes*, 725 F.3d at 357 (citation

omitted). "Only then may the court rely on 'common sense' to forgo precise calculations and exact numbers." *Id*. (citation omitted).

As noted, Plaintiff asserts that based on Defendant's representations through the discovery process, the number of potential class members is approximately 3,184. Defendant does not contest that Plaintiff has met the numerosity requirement. This Court finds that Plaintiff has satisfied the numerosity requirement.

### B. Commonality

Pursuant to Rule 23(a)(2), a court must also determine whether "there are questions of law or fact common to the class," ordinarily known as "commonality." Fed. R. Civ. P. 23(a)(2). Under the Rule, commonality "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 349-50 (quotation omitted). Identical claims or facts among class members are not required. *Marcus*, 687 F.3d at 597. Rather, "[f]or purposes of Rule 23(a)(2), even a single common question will do." *Id*. Claims common to the entire class "must depend on a common contention . . . [that is] of such a nature that it is capable of classwide resolution . . . [and] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Here, in opposing class certification, Defendant essentially argues that Plaintiff has not established commonality because Plaintiff's claims should fail on the merits. In support of this position, Defendant reasserts its summary judgment motion argument; *to wit*: that the convenience fee charge was permissible under the FDCPA and constituted a "reasonable cost of collection" authorized by the Comcast Agreement as it fell in the category of "any collection agency's fees." As noted, this Court denied Defendant's summary judgment motion. Accordingly, this argument is not properly raised here.

The Court finds that there are several common questions of fact and law. As noted, the proposed class consists of consumers within Pennsylvania who paid Defendant a convenience fee to pay a debt owed to Comcast over the phone. As such, the factual basis of the claim is common to all of these potential class plaintiffs. In addition, each proposed plaintiff's claim is dependent on the resolution of the same common legal issue: whether Defendant violated the FDCPA by charging a convenience fee that was unrelated to the cost Defendant incurred to offer payments by phone, in light of the fact that the fee quoted to the putative class members was higher than the convenience fee applied to debts collected on behalf of other companies, such as T-Mobile and Sprint, because those companies imposed a maximum amount that consumers could be charged to pay by phone. This legal issue is common to all proposed class members as each class member's claim will be dependent on the determination of whether the assessment of the convenience fee was or was not a violation of the FDCPA. As such, Plaintiff has met the commonality requirement.

C.      *Typicality*

Under Rule 23(a)(3), a court must also determine whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality and commonality are closely related and often merge. *Marcus*, 687 F.3d at 597. Typicality, however, "derives its independent legal significance from its ability to 'screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present.'" *Id*. at 598 (citation omitted). "If a plaintiff's claim arises from the same event, practice, or course of conduct that gives rise[] to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." *Id*.

Typicality ensures that the putative class members' and representative's interests "are aligned 'so that the latter will work to benefit the entire class through the pursuit of [their] own goals.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001) (citations omitted). Typicality is met "when the named plaintiffs and the proposed class members 'challenge [] the same unlawful conduct.'" *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 394 (E.D. Pa. 2001) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)). Complete "factual similarity is not required; just enough factual similarity so that maintaining the class action is reasonably economical and the interests of other class members will be fairly and adequately protected in their absence." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009).

The facts and legal underpinnings of Plaintiff's case are typical to those of the proposed class. While there may be some factual disparities, such as some members having negotiated the convenience fee as Plaintiff did, these disparities should not pose a conflict between the Plaintiff and the class members he seeks to represent. Each class member's claim arises from the same quoted convenience fee attributed to debts accrued to Comcast. Plaintiff's legal theory and the burden of proof are the same as they would be for each member of the putative class. Therefore, this Court finds that the typicality requirement is also satisfied.

*D.      Adequacy*

Under Rule 23(a)(4), a court must also determine whether the proposed class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "tests the qualifications of class counsel and the class representatives." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016). With regard to the adequacy of class counsel, "[n]o clearly defined standard exists to determine whether class counsel

is qualified to represent the putative class, rather, the court is required to confirm that the proposed attorneys can 'handle' the representation." *Walter v. Palisades Collection, LLC*, 2010 WL 308978, at \*9 (E.D. Pa. Jan. 26, 2007) (citing *New Directions Treatment Srvs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007); *see also Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123, 128-29 (3d Cir. 1987) (noting that "the assurance of vigorous prosecution" by class counsel is a "significant factor" in the Rule 23(a)(4) analysis)). Class counsel must be "qualified, experienced, and generally able to conduct the proposed litigation." *New Directions*, 490 F.3d at 313 (citing *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975)). Encompassed within this analysis is "careful scrutiny of the 'character, competence and quality of counsel retained.'" *Palisades Collection*, 2010 WL 308978, at \*9 (quoting *Kingsepp v. Wesleyan Univ.*, 142 F.R.D. 597, 599 (S.D.N.Y.1992)).

With regard to class representatives, to meet the adequacy requirement, findings must be made that (1) Plaintiff's interests do not "conflict with those of the class," and (2) the proposed class counsel are "capable of representing the class." *Newton*, 259 F.3d at 185. The United States Court of Appeals for the Third Circuit ("Third Circuit") has "recognized that the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class," *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012), and "not proof of vigorous pursuit of the claim." *In re Community Bank of Northern Virginia*, 418 F.3d 277, 307 (3d Cir. 2005). This requirement serves "to ensure that the putative named plaintiff has the incentive to represent the claims of the class vigorously." *Dewey*, 681 F.3d at 184.

Here, Defendant challenges the adequacy of counsel and Plaintiff by alleging that counsel participated in an unethical referral scheme with a non-party "credit repair company," through

which the credit repair company made referrals to counsel in exchange for legal services, and that Plaintiff, although not bound by the Rules of Professional Conduct as a non-attorney, "has been irrevocably tainted," because he referred "maybe a dozen" prospective clients to the credit repair company.

Even were this Court to conclude that the alleged pattern of referrals was unethical under the Rules of Professional Conduct, this conduct falls well short of the type of ethical violations found sufficient to deem counsel inadequate under Rule 23(a)(4) in the one case cited by Defendant for support—*Palisades Collection, LLC*, 2010 WL 308978 (W.D. Wash Nov. 30, 2018). There, two attorneys, father and daughter, sought to serve as class counsel. The father had been disbarred for eight years because of issues involving use of client funds, had engaged in the unlicensed practice of law, had been sanctioned in two different bankruptcy cases, and had received a private remand from the Pennsylvania Disciplinary Board. The daughter had participated in her father's unlicensed practice of law. The *Palisades Collection* court found that the two attorneys were not *per se* disqualified under Rule 23(a)(4) based on their ethical issues, but ultimately concluded they were not adequate to represent a "substantial nationwide class" based on the totality of the circumstances, including their lack of relative experience concerning recent class action litigation, and their history of dilatoriness in failing to prosecute the case before the court. *Id.* at *9-11; *cf. Bereket v. Portfolio Recovery Assocs.*, 2018 WL 6266606, at *2, 5 (W.D. Wash Nov. 30, 2018) (declining to find counsel inadequate under Rule 23(a)(4) where Defendant pointed to relationship between counsel and a credit repair company in an FDCPA case). Similarly, Defendant's arguments regarding Plaintiff being "tainted" by the allegedly unethical referral scheme fail as unsupported by caselaw.

Based on the submissions before it, this Court finds that Plaintiff and counsel "will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), given the alignment of Plaintiff's interests with that of the class and the qualifications and experience of counsel.

## II.    Rule 23(b)(3) Requirements

Having found that each of the Rule 23(a) prerequisites has been satisfied, this Court must now determine, pursuant to Rule 23(b), whether "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  These two requirements are generally referred to as the "predominance and superiority" factors.  *See, e.g.*, *Powers v. Lycoming Engines*, 328 F. App'x 121, 124 (3d Cir. 2009).

### A.    *Predominance Factor*

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Issues common to the class must "predominate" over individual issues. *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 313-14 (3d Cir. 1998).  "Because the 'nature of the evidence that will suffice to resolve a question determines whether the question is common or individual,' 'a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'" *In re Hydrogen Peroxide*, 552 F.3d at 311 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

In arguing that Plaintiff has not met the Rule 23(b) requirements, Defendant asserts that the proposed class is too broad because it could encompass consumers who, through negotiating

with Defendant, paid a convenience fee equal to or less than the actual costs incurred by Defendant to offer the payment-by-phone option. Defendant notes that Plaintiff himself negotiated his convenience fee down from $12.95 to $6.95. In response, Plaintiff argues that this argument is miscast as a predominance issue and unpersuasive. This Court agrees with Plaintiff.

The fact that Defendant can speculate that some putative class members *may* have successfully negotiated the convenience fee down to an amount actually incurred by Defendant to offer the pay-by-phone option has no bearing on the viability of the putative class members' claims. As an analogue, defendants in other cases have argued that they did not violate § 1692f(1) by charging debtors an allegedly impermissible convenience fee to pay by credit card, or over the phone, because they *also* offered the debtors other options of paying without the convenience fee. Courts, however, have roundly rejected these arguments. *See, e.g.*, *Roe v. Totleca Enters.*, 2018 WL 1900532, at *5 (E.D. Tex. Apr. 20, 2018) ("[T]he availability of an alternative method of payment that does not incur the fee does not alter the analysis of whether the fee is a violation of the FDCPA."); *Fuentes v. AR Resources, Inc.*, 2017 WL 1197814, at *7-8 (D.N.J. Mar. 1, 2017) (same); *Johnson-Morris v. Santander Consumer USA, Inc.*, 194 F. Supp. 3d 757, 764-65 (N.D. Ill. 2016) (same); *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1023 (E.D. Mo. July 17, 2015) ("[O]ffering a payment option that does not violate the statute does not save offering a payment option that would violate the statute, as the latter is still an attempt to collect a fee which is prohibited by the FDCPA."); *Acosta v. Credit Bureau of Napa Cty.*, 2015 WL 1943244, at *3-4 (N.D.Ill. Apr. 29, 2015) (same); *Shami v. Nat'l Enter. Sys.*, 2010 WL 3824151, at *3-4 (E.D.N.Y. Sept. 23, 2010) (same). Similarly, this Court concludes that if the convenience fee is found to be a violation of § 1692f(1), the fact that a class member might have successfully negotiated it down to an amount that arguably would not have been a violation of § 1692f(1) would not destroy that

class member's § 1692f(1) claim. In any event, for purposes of predominance, the Court concludes

that the issue common to the class—whether they paid a convenience fee after being quoted

$12.95—"predominates" over individual issues, such as how much they actually paid. As such,

this Court finds that the questions of law or fact common to class members that involve liability

predominate over questions involving only individual members.

### B. Superiority

Under the second criterion of Rule 23(b), this Court must find that a "class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

R. Civ. P. 23(b). The superiority element requires courts "to balance, in terms of fairness and

efficiency, the merits of a class action against those of 'alternative available methods of

adjudication.'" *Community Bank of Northern Virginia*, 418 F.3d at 309 (citations omitted). A

"nonexhaustive list of factors pertinent to a court's 'close look'" at the superiority requirement is

found in the text of the rule. *Amchem*, 521 U.S. at 615-16. The list includes:

> (A) the interest of members of the class in individually controlling
> the prosecution or defense of separate actions; (B) the extent and
> nature of any litigation concerning the controversy already
> commenced by or against members of the class; (C) the desirability
> or undesirability of concentrating the litigation of the claims in the
> particular forum; and (D) the difficulties likely to be encountered in
> the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). The Third Circuit has noted that the FDCPA specifically provides

for class damages and recognized that a class action is a benefit to claimants who can share the

cost of litigation when their individual recoveries are relatively small, as is the case here. *Weiss v.*

*Regal Collections*, 385 F.3d 337, 344-45 (3d Cir. 2004) ("Representative actions, therefore, appear

to be fundamental to the statutory structure of the FDCPA."); *see also Zinser v. Accufix Research*

*Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action.").

Based on this analysis, this Court finds that the Rule 23(b) factors weigh favorably for certification. Because of the number and nature of potential class plaintiffs and the fact that each member's potential recovery is likely to be small compared to the cost of litigating the claims individually, maintaining this matter as a class action is judicially advisable and superior to other available methods.

**CONCLUSION**

After carefully conducting the requisite "vigorous analysis" of the factors in Rules 23(a) and (b) and considering the case law cited, this Court finds that the requirements of Rule 23 have been met and that certification of Plaintiff's proposed class is proper. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.