IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSHUA ROBINSON, on behalf of himself and all others similarly situated** | : | CIVIL ACTION |
| *Plaintiff* | : | NO. 18-441 |
| v. | : | |
| **ENHANCED RECOVERY COMPANY d/b/a/ ERC** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                          SEPTEMBER 16, 2020

# MEMORANDUM OPINION

**INTRODUCTION**

Before this Court are the parties' *motions for final approval of class action settlement*, [ECF 93, 95], and Plaintiff's *motion for approval of attorney's fees and representative's award*, [ECF 94], filed by pursuant to Federal Rule of Civil Procedure ("Rule") 23. This Court previously granted preliminary approval to the underlying class action settlement agreement (the "Agreement"). [ECF 92]. A Fairness Hearing regarding the motions was held on August 12, 2020, at which counsel for all parties appeared and this Court heard oral argument. For the reasons stated herein, the motions are granted.

**BACKGROUND**

Plaintiff Joshua Robinson, on behalf of himself and all others similarly situated, brought this class action against Defendant Enhanced Recovery Company, or ERC, asserting claims of numerous violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., ("FDCPA") by Defendant. Specifically, Plaintiff alleged that Defendant illegally collected a telephone convenience fee for all payments accepted by telephone from Pennsylvania residents during a one-year period prior to the filing of this action. Defendant denies any and all liability and contends that it did not engage in any wrongful or unlawful conduct.

On June 10, 2019, this Court certified, pursuant to Rule 23, the following class: "All consumers with a Pennsylvania address that paid a convenience fee by phone to Defendant for payments for personal, household, or family debts originating with Comcast Cable Communications within one year prior to the filing of the complaint." [ECF 49, 50]. After approximately two years of litigation, the parties attended a settlement conference with Magistrate Judge Lynne A. Sitarski and reached a preliminary settlement agreement. Thereafter, the parties worked diligently to finalize a settlement agreement, of which they now seek final approval from this Court. The Settlement Agreement, which was attached as Exhibit A to the parties' Motion for Preliminary Approval of Class Settlement, [ECF 91-3], provides a class pool of $138,000 to be distributed to the Settlement Class Members by first reimbursing members for the convenience fees that each paid, and then issuing an additional *pro rata* statutory damage award, all while avoiding the risk associated with trial.

On March 4, 2020, this Court granted preliminary approval of the Settlement Agreement and directed that notice be mailed to the Settlement Class Members. [ECF 92]. The Class Administrator has submitted affidavits attesting that notice was effectuated on the Settlement Class Members pursuant to this Court's Orders. The initial class contained 3,178 members. Due to 252 class notices being returned as undeliverable and an additional 93 class notices being forwarded to new address, the functional class size was reduced to 2,923 members. All 2,923 members were sent notice of the Settlement Agreement. As of May 11, 2020, 107 settlement notices were returned as undeliverable, which further reduced the Settlement Class size to 2, 816 members. At that time, 135 additional settlement notices were re-mailed. Subsequently, a total of 35 envelopes were returned as undeliverable, again reducing the Settlement Class size to 2,781 members. The parties represent that as of the date of filing of their underlying motions, no member has opted out, opposed, or otherwise excluded themselves from the settlement. Additionally, no objections to the Settlement Agreement have been received from any Settlement Class Members.

**DISCUSSION**

When granting final approval of a class action settlement, a district court must hold a hearing and conclude that the proposed settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 295 (3d Cir. 2011). There is a strong judicial policy in favor of approving voluntary settlement agreements. *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982). However, courts are generally afforded broad discretion in determining whether to approve a proposed class action settlement. *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995). "The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.*, 55 F.3d 768, 784 (3d Cir. 1995). In addition to conservation of judicial resources, "[t]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Id*.

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the United States Court of Appeals for the Third Circuit ("Third Circuit") set forth factors (often referred to as the "*Girsh* factors") that a district court should consider when reviewing a proposed class action settlement. The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendant to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 258 (citing *Girsh*, 521 F.2d at 157). No single *Girsh* factor is dispositive. *Hall v. Best Buy Co.*, 274 F.R.D. 154, 169 (E.D. Pa. 2011). Further, a "court may

approve a settlement even if it does not find that each of [the *Girsh*] factors weighs in favor of approval." *In re N.J. Tax Sales Certificate Antitrust Litig.*, 750 F. App'x 73, 77 (3d Cir. 2018).

In *Krell v. Prudential Ins. Co. of Am. (In re Prudential)*, the Third Circuit identified additional, non-exclusive factors ("*Prudential* factors") for courts to consider along with the *Girsh* factors in reviewing a proposed class action settlement. 148 F.3d 283, 323-24 (3d Cir. 1998). *See also*, *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). The *Prudential* factors, which often overlap with the *Girsh* factors, include:

> (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;
> (2) the existence and probable outcome of claims by other classes and subclasses;
> (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved or likely to be achieved for other claimants;
> (4) whether class or subclass members are accorded the right to opt-out of the settlement;
> (5) whether any provisions for attorneys' fees are reasonable; and
> (6) whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Pet Food*, 629 F.3d at 350. A court need only consider those *Prudential* factors that are relevant to the specific underlying action. *See In re Prudential*, 148 F.3d at 323-24.

With these principals in mind, this Court will consider each of the *Girsh* factors and the relevant *Prudential* factors in its review of the proposed class action settlement.

### *Girsh* Factors Analysis

*1. The complexity, expense, and likely duration of the litigation*

This case raised significant legal questions regarding Defendant's conduct under the FDCPA. The central legal issue was complex because it required analysis of the contract between Plaintiff and Plaintiff's creditor, Comcast Cable Communications, LLC ("Comcast"), and the application of that

4

contract to the conduct of Defendant, who was not a party to that contract. Additionally, disputes arose between the parties concerning Plaintiff's negotiation of both his underlying debt to Comcast, the telephone convenience fee paid to Defendant, and his voluntary acceptance of the telephone convenience fee for payment by phone.

The parties engaged in discovery for nearly two years prior to settling. Without settlement, litigation would have continued for several more months in accordance with the case management Order. This matter was scheduled for a bench trial and regardless of the result of the bench trial, the parties indicated that they intended to appeal several interlocutory rulings, which would result in a significant delay in effectuating any judgment for the parties. Given the complexity of the action, the expense of trial, and the possible appeal by either party, and the significant length of time before the Settlement Class Members would receive any potential benefit, the first *Girsh* factor favors approval of the Settlement Agreement. *See In re Gen. Motors*, 55 F.3d at 812 (concluding that lengthy discovery and potential opposition by the defendant were factors weighing in favor of settlement).

### 2. *The reaction of the class to the settlement*

"The Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class." *In re Certainteed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 485 (E.D. Pa. 2010) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 234-35 (3d Cir. 2001)). "Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)). A low number of objectors or opt-outs is persuasive evidence that the proposed settlement is fair and adequate. *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 415 (E.D. Pa. 2010) (citing *In re Cendant*, 264 F.3d at 234-35). Here, as of the date of the Fairness Hearing, no Settlement Class Member had objected to the Settlement Agreement or opted out of the settlement. Thus, this factor favors approval.

*3. The stage of the proceedings and the amount of discovery completed*

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant*, 264 F.3d at 235. When evaluating this third *Girsh* factor, courts must evaluate the procedural stage of the case at the time of the proposed settlement to assess whether counsel adequately appreciated the merits of the case while negotiating. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "[C]ourts generally recognize that a proposed class settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144-45 (E.D. Pa. 2000). Settlements reached following discovery "are more likely to reflect the true value of the claim." *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp.*, 2 F.3d at 1314).

As noted, the parties have actively litigated this case for approximately two years and engaged in extensive discovery. At the time the Settlement Agreement was reached, the parties already begun preparing for the scheduled bench trial and had a fully developed factual record. The parties had ample opportunity to identify and assess the strengths and weaknesses of their respective cases. Consequently, this factor weighs in favor of approval.

*4. The risks of establishing liability*

This factor "requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" *Wallace v. Powell*, 288 F.R.D. 347, 369 (M.D. Pa. 2012) (quoting *Prudential II*, 148 F.3d at 319). Courts should "examine what potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *In re Cendant*, 264 F.3d at 237 (quoting *GM Trucks*, 55 F.3d at 814). Further, courts "should avoid conducting a mini-trial and must[,] 'to a certain extent, give credence to the estimation of the probability

of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of actions.'" *Parks v. Portnoff Law Assocs.*, 243 F. Supp. 2d 244, 251 (E.D. Pa. Jan. 22, 2003) (quoting *Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997)). The existence of any obstacles to a plaintiff's success at trial weighs in favor of approval. *See In re Warfarin*, 391 F.3d at 537; *In re Prudential*, 148 F.3d at 319.

In this case, liability has yet to be established and would be litigated as a central issue at trial. Additionally, this Court denied Plaintiff's motion for summary judgment, which indicates at least some risk of loss to both parties at trial. By reaching a satisfactory settlement, Class Counsel protected the Settlement Class Members from all risk of losing on the merits at trial. Therefore, this factor favors approval of the Settlement Agreement.

### 5. *The risks of establishing damages*

This factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, 264 F.3d at 238-39. Courts compare the potential damage award if the case were taken to trial to the benefits of an immediate settlement. *Prudential II*, 148 F.3d at 319. Here, the issue of damages has yet to be established and would be a trial issue. The Settlement Agreement provides Plaintiff and the Settlement Class Members with 100% of their actual damages, in addition to a pro rata share of statutory damages. In contrast, the risk of being able to establish 100% of actual damages at trial is significant. Further, it is unclear whether Plaintiff would have been able to establish statutory damages to the same or a greater extent at trial. Thus, this factor also favors approval.

### 6. *The risks of maintaining class action through trial*

Class certification can always be reviewed or modified before trial, so "the specter of decertification makes settlement an appealing alternative." *Skeen v. BMW of N. Am., Ltd. Liab. Co.*, 2016 WL 4033969, at *15 (D. N.J. July 26, 2016). As the parties note in their briefs, unexpected issues can arise at trial that should be considered. The parties both specifically noted potential concerns over

whether Plaintiff (Robinson) would become unable to proceed, especially in light of the fact that his mother was ill during a previously scheduled trial period and he may not have been able to spend multiple days in court. Additionally, Defendant sought to raise individual factual inquiries related to Plaintiff in order to decertify the class. By settling the case prior to trial, Class Counsel avoided all of these risks. Therefore, this factor weighs in favor of approving the Settlement Agreement.

### 7. *The ability of Defendant to withstand a greater judgment*

This factor considers "whether the defendant[] could withstand a judgment for an amount significantly greater than the settlement." *In re Cendant*, 264 F.3d at 240. Here, while the parties acknowledge that Defendant would likely be able to withstand a greater judgment at trial than is imposed through the Settlement Agreement, the Settlement Agreement provides the Settlement Class Members with 100% of their actual damages and 45% of their maximum possible statutory damages, which reflects the highest amount of actual damages possible and a sizeable statutory award, which would not have been guaranteed at a higher rate if the parties proceeded to trial. Therefore, this factor favors approval.

### 8-9. *The range of reasonableness of settlement in light of best possible recovery and all attendant risks of litigation*

The last two *Girsh* factors are often considered together and are used to evaluate whether the settlement agreement represents either a good value for a weak case, or a poor value for a strong case. *In re Warfarin*, 391 F.3d at 538. In order to assess the reasonableness of a settlement in cases seeking monetary relief, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *In re Prudential*, 148 F.3d at 322.

Here, Plaintiff would not receive any additional compensatory damages even if he was successful at trial because the Settlement Agreement already provides 100% of the Settlement Class Members' actual damages. As noted, the statutory award for each member is 45% of the maximum possible recovery. As Magistrate Judge Sitarski advised the parties, proceeding to trial in the hope of increasing

the percentage of statutory damages available would—at best—result in an increase of approximately $30 per person for the Settlement Class; the risk and cost of litigating this case through trial greatly outweighs the possible benefit of only $30 more per member. Thus, these final *Girsh* factors weigh in favor of approving the Settlement Agreement.

**Relevant *Prudential* Factors Analysis**

While the parties did not identify any *Prudential* factors as relevant to this action, this Court takes note of the following relevant factors in its analysis.

*4. Whether class members are accorded the right to opt-out of the settlement*

Pursuant to this Court's August 21, 2019 Order, [ECF 64], Settlement Class Members were provided notice in the form attached to Plaintiff's motion for approval of class notice, [ECF 63-1], which accorded them the right to opt-out of the settlement by sending an Exclusion Request to the Class Administrator. Notably, as of the date of the Fairness Hearing, no Settlement Class Member had opted out of the settlement. Thus, this factor favors approval.

*5. Whether any provisions for attorneys' fees are reasonable*

As detailed below, the amount of attorney's fees requested in the Settlement Agreement are reasonable. Therefore, this factor also favors approval.

*6. Whether the procedure for processing individual claims under the settlement is fair and reasonable*

Here, the claims processing procedures detailed in the Settlement Agreement are fair and reasonable. The Class Administrator is already in possession of the class list that identifies each Settlement Class Member and the telephone convenience fees each member paid. Within thirty-three (33) days of this Order, the Class Administrator will receive the money that composes the Class Distribution Fund and will distribute all payments as soon as practical. Additionally, Defendant is responsible for all costs associated with class notice and administration. Therefore, this factor favors approval.

**Attorney's Fees & Class Representative Award**

As compensation for their legal services and efforts, Class Counsel have requested that this Court approve the portion of the Settlement Agreement that provides for reimbursement of attorney's fees in an amount of $72,000.00, and an incentive award for the Class Representative in the amount of $3,000.00; these amounts were contemplated and agreed to in the Settlement Agreement and disclosed to Class Members. No objections to the Settlement Agreement have been received from any Settlement Class Members. In support of their request, Class Counsel provided declarations from Attorney Daniel Zemel and Attorney Nicholas Linker that summarize their time and the expenses incurred on behalf of the Class.

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[A] thorough judicial review of fee applications is required in all class action settlements. *Gen. Motors*, 55 F.3d at 819. Generally, awarding fees is within a court's discretion, so long as the court employs the proper legal standards, follows the proper procedures, and makes findings of fact that are not clearly erroneous. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001). In FDCPA cases, an award of attorney's fees is mandatory for a prevailing plaintiff. *Graziano v. Harrison*, 950 F.2d 107, 113-14 (3d Cir. 1991) (citing 15 U.S.C. § 1692(k)(a-b)); *see also Saunders v. Berks Credit & Collections, Inc.*, 2002 U.S. Dist. LEXIS 12718 at 43 (E.D. Pa. 2002). A plaintiff may be considered the prevailing party under the FDCPA "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Norton v. Wilshire Credit Corp.*, 36 F. Supp. 2d 218, 218 (D.N.J. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Under the Settlement Agreement, Defendant agrees to pay the Settlement Class relief in the amount of $138,000, including actual and statutory damages. Thus, Plaintiff may be considered a prevailing plaintiff under the FDCPA.

"The starting point for determining the amount of a reasonable fee is the lodestar, which courts determine by calculating the 'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley*, 461 U.S. at 433). Once the lodestar is determined, the court must then determine whether additional adjustments are appropriate. *McKenna*, 582 F.3d at 455. A reasonable hourly rate in the lodestar calculation is "[g]enerally . . . calculated according to the prevailing market rates in the relevant community," taking into account "the experience and skill of the . . . attorney and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The prevailing market rate is usually deemed reasonable. *Pub. Interest Research Grp. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995). "In calculating the second part of the lodestar determination," *i.e.*, the time reasonably expended, a district court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Pa. Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998).

Here, Class Counsel included a declaration detailing the time spent by each attorney for the specific work done throughout this litigation. The declaration indicates that Mr. Zemel accumulated 118.5 hours of work at a rate of $375.00 per hour and Mr. Linker accumulated 90.7 hours of work at a rate of $325.00 per hour. After reviewing the declaration, it appears that Class Counsel is not requesting compensation for any time that was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Additionally, these hourly rates are within the range of what is reasonable and appropriate in this District's market.[1] Class Counsel has substantial experience in FDCPA litigation, and their hourly

---

[1] The 2017-18 United States Consumer Law Attorney Fee Survey Report indicates that the median rate for consumer lawyers within Pennsylvania is $415.00 per hour, and that the median rate for attorneys handling class actions within Pennsylvania is $475.00 per hour. *See* Plf. Br. ECF 94 at 7. Here, both attorney's rates are lower than each of these median rates.

rates appear to be below the range charged by attorneys with comparable experience for litigation of a similar nature.

Having found the hourly rates and hours expended reasonable, the aggregate lodestar calculation is $73,915.00. Class Counsel also documented a total of $5,507.33 spent on litigation costs and expenses, which they advanced during the course of litigation. Despite a combined fees and costs total of $79,422.33, Class Counsel seeks, and Defendant has agreed to,[2] a maximum award of $72,000.00— more than $7,000.00 less than the actual combined fees and costs total. Therefore, this Court finds that the amount of attorney's fees sought ($72,000.00) is fair and reasonable, and approves an award thereof.

Class Counsel also seeks approval of an incentive award for the named Plaintiff, Joshua Robinson, in the amount of $3,000.00. "Incentive awards are not uncommon in class action litigation[.]" *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). Incentive awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation[.]" *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011) (internal citations and quotations omitted). Incentive awards also "'reward the public service' of contributing to the enforcement of mandatory laws." *Id.* (quoting *In re Cendant*, 232 F. Supp. 2d at 344). This Court recognizes that there would be no benefit to the Settlement Class Members if Plaintiff had not stepped forward and pursued this matter to the current resolution. In doing so, Plaintiff devoted time and energy to this litigation spanning more than two years. The requested award is well within the range of awards made in similar cases. *See, e.g., Barel v. Bank of America*, 255 F.R.D. 393, 402-03 (E.D. Pa. Jan. 16, 2009) ($10,000.00 incentive award); *Perry v. FleetBoston Fin. Corp.,* 229 F.R.D. 105 (E.D. Pa. 2005) (awarding $5,000 to each named Plaintiff in approving class settlement); *Brown v.*

---

[2] In its motion for final approval of class action settlement, [ECF 95], Defendant represented that it "does not object to the counsel fee award of $72,000 (inclusive of Class Administration fees paid to the date of the settlement agreement, as set forth in Plaintiff's Fee Motion and the prior agreement of the parties) and an individual representative award of $3,000[,]" and it "will not file a separate Fee Motion and does not intend to provide a response to the Fee Motion unless expressly directed to do so by the Court."

*Progressions Behavioral Health Servs., Inc.*, 2017 WL 2986300, at *7 (E.D. Pa. July 13, 2017) (awarding $10,000 to each named plaintiff). Settlement Class Members were notified that Class Counsel would request this incentive award and no objections to the Settlement Agreement have been received. This Court approves the requested award of $3,000.00 to Plaintiff Joshua Robinson.

**CONCLUSION**

In light of the presumption of fairness that attaches to the Settlement Agreement, *see In re Warfarin*, 391 F.3d at 539, and the analysis detailed herein regarding the *Girsh* and *Prudential* factors, which weigh in favor of approving the Settlement Agreement, this Court finds that the proposed class action settlement is fair and reasonable and grants approval thereto. Orders consistent with this Memorandum Opinion follow.

*NITZA I. QUIÑONES ALEJANDRO, J.*